UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

KEVIN CHANDLER,

               Plaintiff,

    v.                                    CAUSE NO. 3:20cv958 DRL

RON NEAL *et al.*,

               Defendants.

OPINION AND ORDER

On September 17, 2024, a jury found that Marcus Thompson and Walter Taylor, former correctional officers at Indiana State Prison, used excessive force against Kevin Chandler in violation of his Eighth Amendment rights. The jury awarded Mr. Chandler $1.00 in nominal damages and $50,000 in punitive damages against each defendant. Mr. Thompson and Mr. Taylor now ask the court to reduce the punitive damage award or alternatively to grant a new trial on damages under Rule 59. The court grants a remittitur only.

BACKGROUND

At a one-day jury trial, Mr. Chandler, proceeding *pro se*, presented evidence that then-Officers Thompson and Taylor used excessive force against him. Everyone agreed that Mr. Chandler refused to leave a cell with leads on his handcuffs, but from there the jury heard two diverging stories. Mr. Chandler testified that Officer Thompson slammed him against the steel cage (or door) before he put his entire bodyweight on Mr. Chandler's back and Officer Taylor put his fists into Mr. Chandler's throat, leaving him in serious pain [Tr. 122-24]. Thomas Manjarez, another inmate, testified that these officers hurt Mr. Chandler [Tr. 30]. He described

how the officers "continued to batter him," threw him on the floor, held him by his neck, and one officer knelt on him (Officer Thompson weighing more than 300 pounds as estimated by Mr. Chandler) [*id.*; *see also* Tr. 123].

Mr. Thompson and Mr. Taylor testified that Mr. Chandler was noncompliant, spit on them, and headbutted an officer before they directed him to the floor [Tr. 60-61, 117], but the jury was not obligated to believe their version of events. Mr. Chandler said that the officers threw him down awkwardly on a flight of stairs [Tr. 122]. Everyone agreed that the officers took Mr. Chandler to medical and that he received a prescription for Tylenol afterwards, and the officers argued that he suffered minimal injuries.

Ultimately, the jury found that Mr. Thompson and Mr. Taylor used excessive force. The jury awarded no compensatory damages but awarded nominal damages and $100,000 in punitive damages—$50,000 against each defendant. The defendants challenge the punitive damages as against the manifest weight of the evidence and as unconstitutional.

STANDARD

Rule 59 permits a party to move for a new trial or alter or amend the judgment. Fed. R. Civ. P. 59. The court may "grant a new trial on some or all of the issues." Fed. R. Civ. P. 59(a). "A new trial is appropriate if the jury's verdict is against the manifest weight of the evidence or if the trial was in some way unfair to the moving party." *Venson v. Altamirano*, 749 F.3d 641, 656 (7th Cir. 2014). It is an "extraordinary remed[y] reserved for the exceptional case." *Childress v. Walker*, 787 F.3d 433, 442 (7th Cir. 2015) (citations omitted).

Rule 59 allows for a new trial only if "the verdict is against the weight of the evidence, the damages are excessive, or if for other reasons the trial was not fair to the moving party." *Pickett*

*v. Sheridan Health Care Ctr.*, 610 F.3d 434, 440 (7th Cir. 2010) (quoting *Emmel v. Coca-Cola Bottling Co.*, 95 F.3d 627, 636 (7th Cir. 1996)). Courts "uphold a jury verdict…as long as a reasonable basis exists in the record to support [the] verdict." *Id.* When considering a motion for a new trial, "the evidence must be viewed in the light most favorable to the prevailing party." *Carter v. Moore*, 165 F.3d 1071, 1079 (7th Cir. 1998).

Under Rule 59(e), a court may also "alter or amend a judgment." Fed. R. Civ. P. 59(e). This includes remittitur. *Baier v. Rohr-Mont Motors, Inc.*, 175 F. Supp.3d 1000, 1007 (N.D. Ill. 2016); *see also Sommerfield v. Knasiak*, 967 F.3d 617, 622 (7th Cir. 2020). On review, the court must give a jury's damage determination "substantial deference" but "must also ensure that the award is supported by competent evidence." *Ramsey v. Am. Air Filter Co.*, 772 F.2d 1303, 1313 (7th Cir. 1985). If an award is excessive, "it is the duty of the trial judge to require a remittitur or a new trial." *Linn v. United Plant Guard Workers*, 383 U.S. 53, 65-66 (1966); *see also Baier*, 175 F. Supp.3d at 1007 (when "damages are excessive, the proper remedy is remittitur").

Remittitur is appropriate for damage awards that are "monstrously excessive," have no rational connection to the evidence, and are not "roughly comparable to awards made in similar cases." *Gracia v. Sigmatron Int'l, Inc.*, 842 F.3d 1010, 1022 (7th Cir. 2016). Movants must show that "no rational jury could have rendered a verdict against them." *King v. Harrington*, 447 F.3d 531, 534 (7th Cir. 2006). Courts use the same analysis for Rule 59 motions as summary judgment, except they "now know exactly what evidence the jury considered in reaching it verdict." *Harvey v. Off. of Banks & Real Estate*, 377 F.3d 698, 707 (7th Cir. 2004).

DISCUSSION

A. *Manifest Weight of Evidence.*

Mr. Thompson and Mr. Taylor first ask for a new trial on the issue of damages. They argue that the damage award is against the manifest weight of the evidence. Their argument focuses on a simple proposition: the force couldn't have been *that* bad if a jury awarded Mr. Chandler no compensatory damages. They invite the court to intervene because no reasonable person could conclude that Mr. Chandler was telling the truth without evidence of physical injury. Additionally, they argue that Mr. Chandler presented no evidence of intent or maliciousness to support the punitive award.

Though nominal damages and excessive force may "make strange bedfellows," the law recognizes circumstances in which nominal damages may be available to remedy excessive force violations. *Briggs v. Marshall*, 93 F.3d 355, 360 (7th Cir. 1996); *see also Calhoun v. Detella*, 319 F.3d 936, 942 (7th Cir. 2003) (collecting cases approving nominal damages for Eighth Amendment violations). The absence of serious injury is relevant to the Eighth Amendment inquiry, but it does not end it. *See Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *Meyer v. Robinson*, 992 F.2d 734, 739 (7th Cir. 1993). The "core judicial inquiry" isn't whether some quantum of injury was sustained but whether these officers used force in a good faith effort to maintain or restore discipline or to cause harm maliciously or sadistically. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). When reasonable uses of force, even for a resisting inmate, becomes malicious among all factors, *see Hudson*, 503 U.S. at 7, officers violate the Eighth Amendment—whether a significant injury manifests or not, *Wilkins*, 559 U.S. at 37.

One can imagine scenarios in which excessive force occurs, but the jury awards only nominal damages. First, an officer might use both justified and excessive force at different times during the incident, but the only injury that occurs stems from the justified use of force. *Briggs*, 93 F.3d at 360. Second, a jury may not find injury evidence credible—a constitutional violation has occurred but without compensable injury. *Id.* Third, a victim's injuries could lack monetary value or not be presented to a jury with reasonable certainty, and thereby fall short of meeting an evidentiary burden. *Briggs*, 93 F.3d at 360; *see also Guzman v. City of Chi.*, 689 F.3d 740, 748 (7th Cir. 2012); *Frizzell v. Szabo*, 647 F.3d 698, 701-02 (7th Cir. 2011).

A jury here could have reached its verdict under two of these scenarios. In fairness, Mr. Chandler provided the jury little to work with besides his testimony about pain, medical records about back pain, and an order from a nurse for Tylenol [Tr. 123-25]. The jury found a constitutional violation but may have found it difficult to reasonably monetize Mr. Chandler's testimony about pain and his modest prescription, particularly without testimony from a medical provider or other evidence of reasonable (or anticipated future) treatment costs. *See Frizzell*, 647 F.3d at 702. In such situations, the instructions (consistent with the law) directed an award of nominal damages.

Mr. Taylor and Mr. Thompson overstate their rationale of the jury's verdict to the exclusion of other reasonable explanations. They urge the court to conclude that the jury only could have reached its result by finding Mr. Chandler's evidence of injury "not credible" or caused by "a justifiable use of force." But this argument ignores the legitimate explanations that the jury simply concluded that Mr. Chandler's injuries had no compensable value (outside nominal damages) or fell short of the reasonable certainty needed to award a more substantial measure of

damages. *See Briggs*, 93 F.3d at 360. From there, the jury was free to consider punitive damages, for "nothing prevents an award of punitive damages for constitutional violations when compensatory damages are not available." *Calhoun*, 319 F.3d at 942; *see also Erwin v. Cnty. of Manitowoc*, 872 F.2d 1292, 1299 (7th Cir. 1989).

Next, the defendants argue that, if they used so much force, Mr. Chandler surely would have suffered a physical injury. This was a closing argument and a rejected one [Tr. 167-68]. Of course, the record provided an evidentiary basis for finding a physical injury to his back based on the pain expressed immediately after the incident. A "visible" injury isn't necessary to all "physical" injuries. A jury heard the competing versions of what happened and credited the version presented by Mr. Chandler (and his corroborating witness). On this record, a Rule 59 motion won't save the defendants now. Though the court may take testimony away from the jury that "reasonable [jurors] could not have believed," there isn't cause to do that here. *United States v. Kuzniar*, 881 F.2d 466, 470 (7th Cir. 1989). The defendants point to nothing exceptional, and it is "axiomatic that, absent exceptional circumstances," juries, not trial judges, decide issues of witness credibility. *Id.* For the court to remove testimony from a jury, it must "contradict [] indisputable physical facts or laws." *Id.* at 471.

Mr. Chandler testified that the officers landed him awkwardly on the stairs and then-Officer Taylor pressed on his throat so hard that he couldn't breathe [Tr. 122]. He added that then-Officer Thompson, somewhere north of 300 pounds, put all his weight on Mr. Chandler's back [Tr. 122-24]. The defendants say, for this to happen with no injury, it must be against the laws of nature; but nothing on this record or under the undeniable laws of physics, physiology, or biomechanics contradicts these facts that the jury was perfectly entitled to credit. The officers

offer once more their denial, but the jury obviously viewed that denial as less than credible. Moreover, this was not a case in which there was no evidence of injury, just no evidence that the jury used to award compensatory damages over and above nominal damages. Mr. Chandler had limited documentation of his injuries,[1] but he saw a nurse, received a Tylenol prescription, and testified about pain [Tr. 124-25]. This isn't one of the "exceptional circumstances" where the court is justified in removing testimony from a jury, nor did the defendants ask the court to do so at trial. *Kuzniar*, 881 F.2d at 470.

Awarding punitive damages wasn't against the manifest weight of the evidence. To award punitive damages, the jury had to find that each officer's conduct was malicious or in reckless disregard of Mr. Chandler's rights. *Smith v. Wade*, 461 U.S. 30, 35, 56 (1983); *Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 930 (7th Cir. 2004). The court instructed the jury that conduct was malicious if it was accompanied by ill will or spite, or was done for the purpose of injuring Mr. Chandler; and explained that conduct was in reckless disregard of Mr. Chandler's rights if under the circumstances, a defendant simply did not care about Mr. Chandler's safety or rights [162 Instr. No. 12]. The defendants now argue that Mr. Chandler failed to present any evidence that the officers were motivated by evil intent or callous indifference.

Mr. Chandler testified that when he refused to leave his cell because he wanted his property returned, Mr. Thompson came into his cell and "immediately slammed [his] head against the steel door" [Tr. 120-21]. Mr. Manjarez's testimony that the officer battered Mr. Chandler over Mr. Manjarez's protests supports this [Tr. 30]. From there, Mr. Chandler said the defendants

---

[1] Exhibit 35 documented his nurse visit with RN Tiffany Turner after the altercation. It documented back pain and pain with movement, without visible injuries, and noted that Mr. Chandler was given Tylenol.

tried to drag him up five flights of stairs and then Mr. Taylor "immediately with two fists… put [them] in my throat as [he was] down on the staircase" and cut off Mr. Chandler's breathing [Tr. 122]. Mr. Chandler testified that when other offenders saw this, they noticed and began to comment on it, and the officers stopped [Tr. 122-23]. A rational jury could have viewed this conduct as done, not to promote safety or another legitimate penological purpose, but in callous indifference toward Mr. Chandler's rights, or even with ill will or spite to hurt him. Indeed, a reasonable jury could construe the sudden halt in behavior as a recognition that the officers had overstepped, lost their cool, and been caught. And Mr. Chandler had more. He said they treated him like "an unhuman being," slamming him into a puddle before Officer Thompson put his full weight on Mr. Chandler's back over his protests that he couldn't breathe [Tr. 123-24]. In the same way a rational jury could (and did) find this excessive, they could find it to be malicious or in reckless disregard for Mr. Chandler's safety and rights.

Assertions that Mr. Chandler was being combative don't nullify this, when Mr. Manjarez testified that he was "absolutely not" being combative [Tr. 35] and when Mr. Chandler admitted to certain resistance at different times, some passive and some active. The jury could have credited the testimony favoring Mr. Chandler. The defendants specifically highlighted for the jury the heightened standard for punitive damages, posing the question whether Mr. Chandler proved "that these men acted sadistically and maliciously?" [Tr. 165-66]. Based on the testimony and evidence at trial, the jury concluded yes. The court can't say no rational person could have concluded the same. The evidence supports a jury's award of some punitive damages.

The defendants also speculate, in a single line in their initial brief, that the jurors must have been influenced by arguments in Mr. Chandler's opening and closing statements. They don't

develop the argument; and, even if they had, new trials after improper closing statements are "warranted only if [the] allegedly improper closing remarks depart from the evidence presented at trial and result in substantial prejudice to the opposing party." *Willis v. Lepine*, 687 F.3d 826, 834 (7th Cir. 2012) (quoting *Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 731 (7th Cir. 1999)). "[I]mproper comments during closing argument rarely rise to the level of reversible error." *Id.*; *see also Smith v. Rosebud Farm, Inc.,* 898 F.3d 747, 753 (7th Cir. 2018) (same). The defendants have not met this burden, nor really attempted to meet it.

Additionally, the defense never objected to any of Mr. Chandler's closing argument at trial [Tr. 156-62]. "Counsel for the defense cannot as a rule remain silent, interpose no objections, and after a verdict has been returned seize for the first time on the point that comments to the jury were improper and prejudicial." *Carmel v. Clapp & Eisenberg, P.C.,* 960 F.2d 698, 704 (7th Cir. 1992) (quoting *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 238-39 (1940)); *see also,* 898 F.3d at 753 (party waived any argument over improper closing statements when counsel failed to object). A curative jury instruction would have been the proper remedy if an error occurred, but, rather than ask, the defendants chose to gamble on the jury—a risk the law usually holds is "binding on the gambler," with few exceptions. *Holmes v. Elgin, J. & E. Ry.*, 18 F.3d 1393, 1398 (7th Cir. 1994) (citation omitted). Only plain error might save a party—when the statements, viewed in light of the whole record, prevented a fair trial. *United States v. Briseno*, 843 F.3d 264, 269 (7th Cir. 2016) (no new trial "unless there was an error so egregious that the district judge should have stepped in even though no objection was made") (quotations omitted). Mr. Thompson and Mr. Taylor don't provide the court specific statements to evaluate, so a new trial is certainly not warranted on these grounds. *See United States v. Sineneng-Smith*, 590 U.S. 371, 375-

76 (2020) (courts should not raise arguments for parties when parties are represented by competent counsel). The court denies the Rule 59 motion on this front.

B. *Punitive Damages.*

Mr. Thompson and Mr. Taylor advance additional arguments against punitive damages—namely, that the award disserves its intended purposes of punishment and deterrence and that the award exceeds constitutional limitations. They call the award a windfall. They say, because they are no longer correctional officers supervising inmates and no longer have opportunities to commit Eighth Amendment violations, the award of punitive damages cannot promote specific deterrence—deterring them specifically from future constitutional violations.

Punitive damages cannot "go beyond deterrence and become a windfall," but nothing in the law limits that to specific deterrence. *Lenard*, 699 F.2d at 890; *see also Bogan v. Stroud*, 958 F.2d 180, 185 (7th Cir. 1992) (court should set aside punitive damages award only if "it exceeds what is required to serve the objectives of deterrence and punishment"). Awarding "punitive damages proportioned to [] low compensatory damages" in certain cases may have "a very meager deterrent effect, [may] fail to signal to the prison authorities that savage treatment of prisoners will not be tolerated, and [may] not be commensurate with the moral gravity of the defendants' actions." *Cooper v. Casey*, 97 F.3d 914, 920 (7th Cir. 1996). But that isn't true in every case (nor here after the court's remittitur). The jury could have weighed heavily the need to punish and the need to provide general deterrence to other officers in similar positions. "Punitive damages may be awarded to punish a defendant for his outrageous conduct but also to deter the defendant and others from engaging in the same or similar conduct." *Lenard v. Argento*, 699 F.2d 874, 890 (7th Cir. 1983). Whether another jury would have reached a different result by weighing the purposes

of punitive damages differently isn't alone cause to remit. *See Adams v. City of Chi.*, 798 F.3d 539, 543 (7th Cir. 2015). Nor is the mere absence of specific deterrence.

The defendants next argue that the individual $50,000 punitive damage awards violate the Fourteenth Amendment's due process clause. *See BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 568 (1996); U.S. Const. Am. XIV. Due process forecloses punitive damage awards from being "grossly excessive." *BMW*, 517 U.S. at 562; *Beard v. Wexford Health Sources, Inc.*, 900 F.3d 951, 953 (7th Cir. 2018). The court must consider three guideposts when determining the constitutionality of a punitive damages award: "the reprehensibility of the defendant's conduct, the ratio between punitive and compensatory damages, and any civil penalties that punish similar behavior." *Beard*, 900 F.3d at 954; *see also State Farm Mut. Auto. Ins. v. Campbell*, 538 U.S. 408, 418 (2003).

When evaluating reprehensibility, the court considers whether "the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident." *State Farm*, 538 U.S. at 419. The presence of only one factor may not be enough, and a punitive damages awarded without any is "suspect." *Id.* The law generally presumes that compensatory damages make a plaintiff whole, and " punitive damages should only be awarded if the defendant's culpability, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence." *Id.*

Punitive damages must have a "reasonable relationship" to compensatory damages. *BMW*, 517 U.S. at 580. Although due process eludes an exact formula, *see id.* at 582-83, "few awards

exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process," *State Farm*, 538 U.S. at 425; *accord EEOC v. AutoZone, Inc.*, 707 F.3d 824, 839 (7th Cir. 2013). That said, courts "police a range, not a point." *Est. of Moreland v. Dieter*, 395 F.3d 747, 757 (7th Cir. 2005) (citation omitted). Depending on the compensatory damages amount and the harm, an even greater ratio may be permissible. *State Farm*, 538 U.S. at 425. The analysis turns on the particular facts and circumstances. *Id.*; *see Mathias v. Accor Econ. Lodging, Inc.,* 347 F.3d 672, 676-78 (7th Cir. 2003) (upholding a punitive damages award ratio of 37:1 based on the case's specific facts). "So long as the award has a reasonable basis in the evidence, a jury has wide discretion in determining damages." *Gracia*, 842 F.3d at 1025.

Mr. Thompson and Mr. Taylor argue that the constitutional guideposts (reprehensibility, ratio, and comparable civil penalties) mandate the remittitur of the jury's $100,000 verdict. *See Beard*, 900 F.3d at 954; *State Farm*, 538 U.S. at 418. To get straight to the point, the court agrees that the $50,000 individual punitive damages award against each defendant cannot constitutionally stand this high on this record, but Mr. Thompson and Mr. Taylor seek a reduction beyond what the law requires. And the court won't grant them a windfall on a Rule 59 motion any more than it will allow the jury to grant Mr. Chandler a windfall.

With respect to reprehensibility, "perhaps the most important indicium of the reasonableness of a punitive damages award," *Kunz v. DeFelice*, 538 F.3d 667, 679 (7th Cir. 2008), the jury heard Mr. Chandler's testimony about officers slamming him into a steel cage or door, dragging him out of his cell, slamming him awkwardly on staircase, putting fists in his throat, and applying full body weight to his back [Tr. 121-24]. Though officers may use reasonable measures of force and may at times need to use body weight or a wall to maintain control and safety, the

jury could find slamming Mr. Chandler into a steel cage or door or atop a staircase or, worse yet, putting fists into his throat to be particularly reprehensible. This was violent conduct, and they are lucky that this didn't cause more physical harm than the pain Mr. Chandler described. *See BMW*, 517 U.S. at 575-76. It was not an accident, but something the jury was entitled to view as displaying a reckless disregard for Mr. Chandler's health.

Punitive damages must be assessed separately against each defendant, *Green v. Howser*, 942 F.3d 772, 781 (7th Cir. 2019), but the jury could have viewed each defendant to be independently reprehensible here. When Mr. Chandler didn't want to leave his cell, Mr. Thompson didn't discuss things, he didn't wait, he "immediately" slammed Mr. Chandler's head against the steel cage or door, causing Mr. Chandler to momentarily black out [Tr. 121]. *See Est. of Moreland v. Dieter*, 395 F.3d 747, 757 (7th Cir. 2005) (throwing a handcuffed man's head against a concrete wall "malicious and cruel"). This wasn't commensurate with his passive resistance at the time, and was excessive and malicious, so the jury could say.

Both officers then dragged Mr. Chandler out of the cell before Mr. Chandler began to actively resist [Tr. 122]. Mr. Chandler testified that both slammed him down on the stairs [*id.*]. At that point, Mr. Taylor, somewhat inexplicably, put both his fists into Mr. Chandler's throat, cutting off his breathing [*id.*]. Although officers may use some force when individuals resist, *Phillips v. Cmty. Ins. Corp.*, 678 F.3d 513, 524-25 (7th Cir. 2012), the court struggles to think of a situation when driving two fists into a person's throat would ever be justified, except in the most dire of circumstances confronting an officer and not likely replicable by a handcuffed inmate.

Not finished yet, Mr. Thompson then "laid his 350 pounds" on Mr. Chandler's back [Tr. 123-24]. Again, the court understands there may be times when "[k]neeling with just enough

force to prevent an individual from 'squirming' or escaping might be eminently reasonable." *Abdullahi v. City of Madison*, 423 F.3d 763, 771 (7th Cir. 2005); *see also Catlin*, 574 F.3d at 367-68. But on this record, Mr. Chandler was neither capable of escaping nor was the force just enough to subdue him. Placing one's entire bodyweight on a handcuffed prisoner's back could have resulted in serious harm to Mr. Chandler, and even Mr. Thompson testified that it was something he was never taught and was "unpractical and unethical" [Tr. 111].

Officer brutality, by those in positions of authority and performed in the public trust, adds to its reprehensibility. *Kunz*, 538 F.3d at 679. This is particularly true when an inmate is shackled, or handcuffed as Mr. Chandler was [Tr. 120]. *Kunz*, 538 F.3d at 679. The jury also was free to view the officers' denials as displaying a lack of remorse, and thereby being more worthy of opprobrium. Mr. Thompson, in response to Mr. Chandler's questioning, denied using force and testified "never touched you" five times—something even the court found hard to believe and troubling when everyone knew he had [Tr. 96-97]. Whether Mr. Thompson might not have viewed his use of force as excessive would be a fair remark based on competing versions of the incident, but denying that he ever touched Mr. Chandler just made him seem less than credible. He repeated this denial on cross-examination before then admitting that he "stood him up" and filled out a use-of-force report [Tr. 103, 106-07]. Mr. Taylor testified that he didn't have "remorse for anything" [Tr. 55].

In counterbalance, this was a single incident, albeit a course of several acts and by two officers. Noting the greater risk from the uses of force chosen by these officers, Mr. Chandler's lack of serious injury and his resistance lessens the reprehensibility. *See Jones v. Anderson*, 116 F.4th 669, 677 (7th Cir. 2024) (Eighth Amendment analysis includes the threat perceived and the injury

to an inmate); *Soto v. Dickey*, 744 F.2d 1260, 1267 (7th Cir. 1984) (when a prisoner defies an order, "some means must be used to compel compliance, such as . . . physical force"). But more aggravates this factor than mitigates it. *See Kunz*, 538 F.3d at 679.

The defendants argue that the ratio between compensatory damages ($1 in nominal damages) and punitive damages ($50,000 each) shows the award was flawed. Single digit ratios are typically reasonable. *State Farm*, 538 U.S. at 425; *EEOC*, 707 F.3d at 839. This ratio is essentially 50,000:1, and while lower compensatory awards may sometimes justify higher ratios, this is certainly "judicial eyebrow" raising territory. *See BMW*, 517 U.S. at 583 (500:1 was "breathtaking"); *see also Kidis v. Reid*, 976 F.3d 708, 716 (6th Cir. 2020) (describing a 200,000:1 ratio as "whopping" and "eye-popping" but noting that constitutional cases may present rare reasons to adjust the ratio analysis). Courts have sometimes approved sizeable punitive awards with only nominal damages. *See, e.g., Coleman v. Vinson*, 2019 U.S. Dist. LEXIS 163263, 5-6 (S.D. Ill. Sept. 24, 2019) (upholding $35,000 punitive damage award with only nominal damages in a prisoner excessive force case); *Townsend v. Allen*, 2009 U.S. Dist. LEXIS 9911, 9 (W.D. Wis. Feb. 10, 2009) (remitting $295,000 punitive damage award to $29,500 in a case with no physical harm). But neither the parties nor the court have found a similar case upholding a punitive award with this kind of ratio. This factor weighs demonstrably in favor of remittitur.

Mr. Thompson and Mr. Taylor point to the comparable penalties prong. They assert that others who used significantly more force were assessed less in punitive damages. *BMW* focuses on statutory consequences. *BMW*, 517 U.S. at 584. They point out that battery that doesn't result in bodily injury is a Class B misdemeanor under Indiana law, and battery resulting in bodily injury is a Class A misdemeanor. Ind. Code §§ 35-42-2-1(c), (d)(1). A person convicted of a Class B

misdemeanor faces up to 180 days imprisonment and a fine of up to $1,000. Ind. Code § 35-50-3-3. A Class A misdemeanor can result in up to a year in prison and a fine of up to $5,000. Ind. Code § 35-50-3-2. The defendants omit this, but the court notes that battery resulting in moderate bodily injury is a Level 6 felony.[2] *See* Ind. Code § 35-42-2-1(e)(1). Under Indiana law, this could result in incarceration between 6-30 months and up to a $10,000 fine. Ind. Code § 35-50-2-7(b). The parties focus on the fines, but the conduct for each variant is also reprehensible enough that the Indiana legislature attaches prison time, and courts have recognized that "fines alone might not tell the whole story about proportionality when imprisonment is also on the table." *Kunz*, 538 F.3d at 680. Additionally, the state battery charge does not encompass the power imbalance inherent in the officer-inmate relationship, something that adds to the reprehensibility here. *See id.* at 679; *see also Farfaras v. Citizens Bank & Tr.*, 433 F.3d 558, 567 (7th Cir. 2006) (emphasizing the increased reprehensibility surrounding using power imbalance as an opportunity to harm someone). Still, the financial penalties, even for the maximum possible offense here, are significantly lower than the $50,000 the jury awarded here against each former officer.

The court can also consider damage awards imposed in similar cases. *See Est. of Moreland*, 395 F.3d at 757-58. The defendants cite *Bogan*, 958 F.2d at 186, which upheld an award of $5,000 against an officer.[3] In *Bogan*, the plaintiff had stabbed an officer in a struggle before being stabbed himself but succeeded in proving an excessive force claim to the jury. *Id.* at 182. The jury awarded

---

[2] "Moderate bodily injury" is "any impairment of physical condition that includes substantial pain." Ind. Code § 35-31.5-2-204.5.

[3] According to the CPI inflation calculator, this award would be equal to roughly $11,400 today. https://www.bls.gov/data/inflation_calculator.htm *See Pickett*, 664 F.3d at 648 (holding that "the CPI belongs to the category of public records of which a court may take judicial notice").

no compensatory damages (despite alleged injuries), only nominal and punitive damages. *Id.* The court of appeals upheld the punitive damage award as "a reasonable amount given the nature of the violation . . . found by the jury." *Id.* at 186.

The defendants also highlight *McKinley v. Trattles*, 732 F.2d 1320, 1327 (7th Cir. 1984), a case decided before the pronouncement of the constitutional test. The court of appeals reduced a jury award of $15,000 in punitive damages for an unconstitutional prison strip search and beating, setting an "upper limitation" around $6,000,[4] holding that though that wasn't a "mandatory ceiling," the court would have difficulty seeing how more would be justifiable on that record. *Id.* That court voiced concern that the jury "may have been moved by a desire to compensate [the plaintiff] for his possible, though not proven, injuries." *Id.* at 1328. The defendants argue that if the initial $15,000 award (roughly $46,200 today) was excessive there, then the dual $50,000 awards here are too. Even without the same constitutional underpinnings, this case favors a reduction, even when that case and this may be reprehensible in differing degree.

The defendants next point to other $1,000 awards in excessive force cases with compensatory damages. *See, e.g., Freeman v. Franzen*, 695 F.2d 485, 488 (7th Cir. 1982) ($2,500 in compensatory damages and $1,000 in punitive damages for excessive force after prisoner was beaten); *see also Montanez v. Simon,* 755 F.3d 547, 551 (7th Cir. 2014) ($1,000 in compensatory and $1,000 in punitive damages for Fourth Amendment excessive force with minor injuries). Mr. Chandler points to another case, which upheld individual punitive damage awards of $22,500 against defendants in a prison medical indifference case, saying that "[t]he sky is not the limit, but

---

[4] This would be equivalent to about $18,400 today.

$22,500 is not the sky." *Cooper*, 97 F.3d at 920 (upholding a ratio of 12:1). Of course there, the jury also had awarded compensatory damages. *See id.* at 916.

There are other cases. *See Est. of Moreland*, 395 F.3d at 757. In one, a jury awarded nominal damages to a prisoner for an Eighth Amendment deliberate indifference medical claim. *Gevas v. Pork*, 2024 U.S. Dist. LEXIS 30402, 2-3 (N.D. Ill. Feb. 22, 2024). Although the jury chose not to credit evidence of the prisoner's injuries, it awarded $60,000 in punitive damages—$35,000 against one officer and $25,000 against another. *Id.* at 3. These officers asked the court to remit the punitive damages award, but the court declined, emphasizing that the "primary responsibility for deciding the appropriate amount of punitive damages rests with the jury." *Id.* at 4 (quoting *EEOC v. AIC Security Investigations, Ltd.*, 55 F.3d 1276, 1287 (7th Cir. 1995)). *Gevas* held that the officers' actions sufficiently reprehensible and noted the unique nature of claims in which "punitive damages serve an important deterrence function in cases that prosecute dignitary harm" when "compensable harm can be minimal or hard to quantify." *Id.* at 8.

Other courts have either upheld similar awards or remitted even larger verdicts to fall in line with something higher than the defendants here propose. *See, e.g.*, *Coleman*, 2019 U.S. Dist. LEXIS 163263 at 5-6 (upholding $35,000 in punitive damages for excessive force when only nominal damages were awarded and listing cases); *Townsend*, 2009 U.S. Dist. LEXIS 9911 at 9 (remitting a $295,000 award to $29,500 on an Eighth Amendment conditions of confinement claim). The $50,000 assessed against Mr. Thompson and Mr. Taylor individually exceeds these awards, but not by nearly as much as they suggest.

In another case, the Sixth Circuit evaluated damages in an excessive force case that resulted in nominal damages and a punitive damages award of $200,000. *Kidis*, 976 F.3d at 713.

A suspect fled arresting officers and, after pleading guilty to resisting and obstructing a police officer (among other charges), alleged that the arresting officer used excessive force. *Id.* at 713-14. A jury agreed and awarded him "[s]omewhat puzzlingly" nominal damages and $200,000 in punitive damages. *Id.* at 714. In listing comparable cases, the court decided that $200,000 was "at the high end of the list," and it concluded that "the maximum punitive damages award supported by due process [] is $50,000"—the very amount at issue here. *Id.* at 717-18.

Under this more expansive range, the individual $50,000 awards aren't such an outlier on their face to warrant a reduction to $5,000, what these defendants seek. As found by the jury, this was reprehensible conduct, committed in a position of trust, and seemingly without recognition or remorse. Even when Mr. Chandler contributed by resisting or refusing to comply with the leads and even when he sustained little by physical injury, it would be an unusual case in which fists to the neck (Officer Taylor) would be justified for a handcuffed inmate, and far more dire a circumstance than the evidence, which the jury undoubtedly credited, showed here. Nor would it be necessary for a correctional officer (Officer Thompson) to enter the cell and slam Mr. Chandler's head against the steel door or cage merely because he would not submit to have leads placed on his handcuffs, particularly when Mr. Chandler remained handcuffed in a locked holding cell at no risk to anyone. Mr. Thompson admitted it would be unethical to place on a knee and full weight on the inmate's back. Such conduct potentially carries time in prison and a $1,000 to $10,000 fine.

Although these former officers gave verbal warnings before the cell extraction, and although their other uses of force would not reasonably be deemed excessive, the evidence was light as to why there was such urgency in conducting the extraction and transfer right then,

particularly for an inmate with whom they had never had a problem with before that day [Tr. 53] and who was obviously upset after his disciplinary hearing [Tr. 89]. Naturally, correctional officers cannot be impeded in their duties. They have tough jobs to do and many inmates to oversee. And an inmate doesn't have a right to dictate when he will return to his cell and when he won't. Still, according to their testimony, after the altercation they promptly placed Mr. Chandler back in the holding cell and later had no issues escorting him to medical and then to a special management cell [Tr. 90-91], so mere moments rather than fisticuffs could have been an answer. Mr. Chandler was in their words "100 percent compliant" then [Tr. 91].

The comparable fines and prison time and comparable cases offer a range for consideration. The reprehensibility of these officers' individual conduct favors a higher award, whereas the ratio favors a lower award even while giving the jury "substantial deference." *Ramsey*, 772 F.2d at 1313. Though fists to the neck (Officer Taylor) might individually be the more reprehensible and excessive single act, the slam against the door cage and self-described "unethical" full weight on Mr. Chandler's back (both acts by Officer Thompson) provide a rationale for treating both similarly, not least when both seemed to be involved in the slam on the staircase. In sum, with reprehensibility being the more important factor, the court remits the individual punitive damage award against each defendant to $20,000. This award brings the case more in line with prevailing cases and the potential civil penalties without disregarding the jury's evaluation of the need for punishment and deterrence based on this record of mixed evidence.

In a final argument, Mr. Thompson and Mr. Taylor argue that the original verdict presented undue hardship to them and their families—something they perhaps should have considered before engaging in conduct their peers on the jury found worthy of punishment, and

something they perhaps should have discussed with their former employer and with defense counsel who often have the ability to resolve these cases for less in settlement (though perhaps not here). Personal finances may factor into punitive damage calculations when the defendant cannot possibly pay. *Kemezy v. Peters*, 79 F.3d 33, 36 (7th Cir. 1996). "The defendant who cannot pay a large award of punitive damages can point this out to the jury so that they will not waste their time and that of the bankruptcy courts by awarding an amount that exceeds his ability to pay." *Id.* (emphasis added). Why such a point was not made to the jury the court cannot say. But the court will not permit the defendants to undo their strategic decision at trial by way of a "now-that-we-think-about-it" post-trial motion. Their concern also presupposes that the State of Indiana will not ultimately authorize payment of these damages, and no one says this decision has been made one way or the other. *See* Ind. Code § 34-13-4-1(2). The court won't act on something that appears to be premature, particularly in light of today's reduction already.

CONCLUSION

Accordingly, the court DENIES the motion for a new trial, GRANTS IN PART the motion to remit damages [171], REMITS the punitive damage award against each defendant to $20,000, DIRECTS the clerk to enter an amended judgment accordingly, and DENIES AS MOOT Mr. Chandler's motion to enforce the original judgment [173].

SO ORDERED.

February 25, 2025                          *s/ Damon R. Leichty*
                                           Judge, United States District Court

21